SC

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Albert Kuck, | No. CV 08-0756-PHX-DGC (JJM) |
| Plaintiff, | **ORDER** |
| vs. | |
| Dora Schriro, et al., | |
| Defendants. | |

Plaintiff Albert Kuck, who is confined in the Arizona State Prison Complex, Cheyenne Detention Unit, in Yuma, Arizona, has filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983 and an Application to Proceed *In Forma Pauperis*. (Doc.# 1, 3.)[1] The Court will order Defendants Schriro, Rollins, Haley, Sternes, Franko, Watson, Miller, Crouch, and O'Bryant to answer Count I of the Complaint and will dismiss the remaining claim and Defendants without prejudice.

**I.    Application to Proceed *In Forma Pauperis* and Filing Fee**

Plaintiff's Application to Proceed *In Forma Pauperis* will be granted. 28 U.S.C. § 1915(a). Plaintiff must pay the statutory filing fee of $350.00. 28 U.S.C. § 1915(b)(1). The Court will assess an initial partial filing fee of $24.00. The remainder of the fee will be collected monthly in payments of 20% of the previous month's income each time the amount in the account exceeds $10.00. 28 U.S.C. § 1915(b)(2). The Court will enter a separate Order requiring the appropriate government agency to collect and forward the fees according to the statutory formula.

---

[1] "Doc.#" refers to the docket number of filings in this case.

**TERMPSREF**

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

## III. Complaint

Plaintiff alleges two counts in his Complaint for threats to his safety and retaliation. He sues the following individuals, who all work for the Arizona Department of Corrections (ADC): Director Dora Schriro, Assistant Deputy Director Bennie Rollins, Protective Segregation Chair Herb Haley, Classification Supervisor Stephan Morris, and Classification Officer Kristine Harkin.[2] Plaintiff also sues Yuma Complex Warden Sternes and the following Cheyenne Unit personnel: Deputy Warden Franko, Assistant Deputy Warden Watson, Chief of Security Miller, Special Security Unit (SSU) Supervisor McNatt, Discipline Co-ordinator Clark, Disciplinary Hearing Officer Rearend, Correctional Officer (CO) IV Crouch, CO III O'Bryant, and Cheyenne Detention Unit (CDU) Supervisor Ramirez. Plaintiff also sues Greg Fizer, Warden and Protective Segregation Reviewer, and Ron Schmidt, CO IV and Protective Segregation Manager, both at the Tucson Complex. Plaintiff seeks declaratory, injunctive, compensatory, and punitive relief.

## IV. Failure to State a Claim

To state a claim under § 1983, a plaintiff must allege facts showing that (1) the conduct about which he complains was committed by a person acting under the color of state law and (2) the conduct deprived him of a federal constitutional or statutory right. Wood v. Ostrander, 879 F.2d 583, 587 (9th Cir. 1989). In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must

---

[2] Plaintiff refers to an Officer Barron. (Doc.# 1 at 2, 3B.) The Court does not consider allegations against him because he was not named as a Defendant in the Complaint.

1  allege an affirmative link between the injury and the conduct of that defendant. <u>Rizzo v.</u>
2  <u>Goode</u>, 423 U.S. 362, 371-72, 377 (1976).

### A.     Count I

In Count I, Plaintiff alleges threats to his safety because he has repeatedly been assigned to general population units despite knowledge that he is a target of a Security Threat Group (STG), specifically the Aryan Brotherhood (AB). A prisoner has no constitutional right to enjoy a particular security classification. <u>See</u> <u>Meachum v. Fano</u>, 427 U.S. 215, 224-25 (1976) (no liberty interest protected by the Due Process Clause is implicated in a prison's reclassification and transfer decisions); <u>see also</u> <u>Myron v. Terhune</u>, 476 F.3d 716, 718 (9th Cir. 2007) (classification in level 4, rather than level 3, prison did not present an atypical and significant hardship). Nevertheless, prison officials are required to take reasonable measures to guarantee the safety of inmates and officials have a duty to protect prisoners from violence at the hands of other prisoners. <u>Farmer v. Brennan</u>, 511 U.S. 825, 832-33 (1994); <u>Frost v. Agnos</u>, 152 F.3d 1124, 1128 (9th Cir. 1998).

To establish a violation, an inmate must allege facts showing that he was incarcerated under conditions posing a substantial risk of harm and that prison officials were "deliberately indifferent" to the inmate's safety. <u>Farmer</u>, 511 U.S. at 834; <u>Frost</u>, 152 F.3d at 1128; <u>Redman v. County of Los Angeles</u>, 942 F.2d 1435, 1443 (9th Cir. 1991) (*en banc*). To adequately allege deliberate indifference, a plaintiff must set forth facts showing that a defendant official knew of, but disregarded, an excessive risk to inmate safety. <u>Farmer</u>, 511 U.S. at 837. That is, "the official must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the inference." <u>Farmer</u>, 511 U.S. at 837; <u>Frost</u>, 152 F.3d at 1128; <u>Redman</u>, 942 F.2d at 1442.

Plaintiff alleges the following facts in support of Count I. In April, 1991, Plaintiff was approached by AB prison gang members about bringing drugs into the prison following his then-imminent release. The gang members knew where Plaintiff's mother lived and threatened to have her killed if Plaintiff refused to co-operate. Plaintiff was released later

1  that month and given $3,000 to bring drugs into the prison. Plaintiff was afraid to try to
2  bring drugs into the prison and hid instead. An AB associate, Ken Groves, threatened
3  Plaintiff's mother unless she told him Plaintiff's whereabouts. Although she told Groves
4  Plaintiff's location, Plaintiff was able to evade him.

5  In May, 2005, Plaintiff was again incarcerated by ADC and assigned to the Kaibab
6  Unit in the Winslow Complex, where Groves was also held. On November 18, 2005,
7  Plaintiff was severely beaten by inmates Lawson and Morrow. He was placed in protective
8  segregation pending investigation, but Defendants Schriro and Haley denied him assignment
9  to long-term protective segregation. Defendants Harkin and Morris transferred Plaintiff to
10 the Tucson Complex after he was found guilty of fighting, which Plaintiff contends was
11 simply self-defense.

12 In January, 2007, inmate Mike Gilespy arrived in the Rincon Unit of the Tucson
13 Complex with a list of inmates who were to be killed, including Plaintiff, who was also
14 housed in Rincon. Fellow inmate Tye Wade was told that an attempt would be made on
15 Plaintiff's life within a day if he remained in the unit. Plaintiff alerted Sergeant Barry and
16 Lieutenant Johnson and was temporarily placed in the Tucson Complex Cimarron Detention
17 Unit. While there, however, Gilespy was moved into Plaintiff's housing area and had
18 "access" to Plaintiff during recreation. (Doc.# 1 at 3A.) Further, Gilespy informed his
19 cellmate, Andrew, of Plaintiff's past, and Andrew was able to learn Plaintiff's name and
20 inmate number.

21 In June 2007, Plaintiff was again denied long-term placement in protective
22 segregation and was transferred to the Yuma Complex, Cheyenne Unit, as an alternate
23 placement. Andrew was also transferred to the Cheyenne Unit at some point and in January,
24 2008, Andrew attacked Plaintiff, breaking his nose and choking him for two minutes, while
25 telling other inmates that he intended to kill Plaintiff. After Plaintiff was able to break free,
26 he was placed in the Cheyenne Detention Unit pending another protective segregation
27 review. Plaintiff contends that his repeated assignment to alternate placements, rather than
28 long-term protective segregation pursuant to policies promulgated by Schriro and enforced

1  by many of the other Defendants, has resulted in repeated assaults. Further, he alleges that
2  his repeated assignment to protective segregation reviews alerts inmates in general
3  population of his status as an STG target and increases the risk of further assaults on him
4  when he is eventually returned to general population, even in an alternate placement.

### 1. McNatt and Ramirez

Plaintiff sues Sergeants McNatt and Ramirez, who are identified respectively as the supervisors of the Cheyenne Special Security and Detention Units. Plaintiff fails to allege any facts against them. Accordingly, he fails to state a claim against them and they will be dismissed.

### 2. Harkin, Morris, Schmidt, and Fizer

Plaintiff contends that his placements and/or classification by Defendants Morris and Harkin have resulted in repeated "brutal assaults." (Doc.# 1 at 3B.) The only placement he attributes to Morris and Harkin is his assignment to the Tucson Complex. Plaintiff does not allege that he was assaulted at the Tucson Complex or that Morris and Harkin should have known that his placement at the Tucson Complex would result in an assault. Their placement of Plaintiff at Tucson Complex, absent other facts, is not sufficient to state a claim against them. See Meachum, 427 U.S. at 224-25. Because Plaintiff fails to allege facts against them to support that they acted with deliberate indifference to a substantial risk of harm to him, he fails to state a claim against them and they will be dismissed.

Plaintiff also sues Ron Schmidt, a CO IV and the Protective Segregation Manager at the Tucson Complex, and Greg Fizer, the Tucson Complex Warden and the "protective segregation review person" there. (Doc.# 1 at 2B.) Plaintiff fails to allege facts to support that Schmidt or Fizer knew or should have known that their acts were likely to result in a substantial risk of harm to Plaintiff or facts to support that either acted with deliberate indifference to such risk of harm. Accordingly, Plaintiff fails to state a claim against Schmidt or Fizer and they will also be dismissed.

### B. Count II

In Count II, Plaintiff alleges that certain Defendants retaliated against him by issuing

disciplinary charges and/or finding him guilty of the disciplinary charge based on the following facts. On or about February 13, 2008, in a telephone conversation with his mother, Plaintiff discussed ADC's refusal to assign him to protective segregation, despite awareness that he was a target of an STG. Plaintiff facetiously told his mother that he would be safer if he assaulted someone because ADC would then assign him to the highest custody level, which would protect him from assault. Defendant Franko charged Plaintiff with making threats based on those comments. Clark processed the charge and Captain Rearend found Plaintiff guilty, allegedly without sufficient evidence and in violation of Plaintiff's First Amendment free speech rights. Plaintiff alleges that he was "given full penalties." (Doc.# 1 at 4.) According to information available from ADC's website, Plaintiff was placed in Parole Class III as a sanction. Under ADC policies, that placement necessarily extended his sentence.[3]

When success on a claim could potentially affect the duration of confinement, habeas corpus is the appropriate vehicle to seek relief. A civil rights action pursuant to § 1983 is not available unless and until the prisoner has obtained a "favorable termination" of the underlying disciplinary action. Docken v. Chase, 393 F.3d 1024, 1031 (9th Cir. 2004); see Heck v. Humphrey, 512 U.S. 477, 489 (1994). Under the "favorable termination" rule:

> In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by action whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by

---

[3] According to the ADC website, Plaintiff was found guilty of a "Major Violation" on February 13, 2008, and was placed in Parole Class III. See http://test.azcorrections.gov/isearch/inmate_datasearch/results.aspx?InmateNumber=049030&LastName=KUCK&FNMI=A&SearchType=SearchInet. Internal Management Policy 103.3.1.5.7 defines a Major Violation as "[a] rule violation of such magnitude that a finding of 'guilty' could result in penalties including the loss of earned release credits, restitution, placement in Parole Class III or disciplinary detention." See http://test.azcorrections.gov/isearch/inmate_datasearch/info/infractions.htm. Under 103.3.1.5.9., inmates serving Parole Class III time are not eligible for parole until they are returned to a parole-eligible class; the parole eligibility date is extended one day for each day they remain in Class III; and inmates "serving Parole Class III time shall not be eligible to earn release credits until they are returned to Parole Class I." Id.

      executive order, declared invalid by a state tribunal . . . or called into question by a federal court's issuance of a writ of habeas corpus . . .

Heck, 512 U.S. at 486-87. The "favorable termination" rule has been extended to prison disciplinary actions, when alleged constitutional violations, if established, would "necessarily imply the invalidity" of the disciplinary charge resulting in the loss of good-time credits. Edwards v. Balisok, 520 U.S. 641, 646 (1997); cf. Butterfield v. Bail, 120 F.3d 1023 (9th Cir. 1997) (applying the "favorable termination rule" in challenge to parole revocation). Thus, where success in a prisoner's action would decrease the length of his sentence, a § 1983 claim is not cognizable until the disciplinary conviction has been invalidated.

      Plaintiff is unable to accrue early release credits while he is in Parole Class III. To prevail on his retaliation and free speech claim under § 1983 would necessarily undermine the validity of Plaintiff's disciplinary sanction and would necessarily decrease the length of Plaintiff's sentence. Therefore, Plaintiff must seek review of the disciplinary proceedings and obtain a "favorable termination" before he may seek damages pursuant to § 1983. For that reason, Count II and Defendants Clark and Rearend will be dismissed without prejudice.

      To challenge disciplinary proceedings, a prisoner may seek federal habeas relief pursuant to 28 U.S.C. § 2254, which is the "exclusive vehicle" for a state prisoner to seek relief from an administrative decision in federal court. See White v. Lambert, 370 F.3d 1002, 1009-10 (9th Cir. 2004). Before a federal court may grant habeas relief, however, a prisoner must first have exhausted remedies available in the state courts. See 28 U.S.C. § 2254(b)(1); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). The federal court will not entertain a petition for writ of habeas corpus unless each and every issue has been exhausted. Rose v. Lundy, 455 U.S. 509, 521-22 (1982); Olvera v. Guirbino, 371 F.3d 569, 572 (9th Cir. 2004) (district court may not consider a claim until petitioner has properly exhausted all available remedies). When seeking habeas relief, the burden is on the habeas petitioner to show that he has properly exhausted each claim. Cartwright v. Cupp, 650 F.2d 1103, 1104 (9th Cir. 1981) (*per curiam*).

      To exhaust claims, a prisoner must give the state courts a "fair opportunity" to act on

1   his claims. Castillo v. McFadden, 370 F.3d 882 (9th Cir. 2004).  He must describe both the
2   operative facts and the federal legal theory so that the state courts have a "fair opportunity"
3   to apply controlling legal principles to the facts bearing upon his constitutional claim." Kelly
4   v. Small, 315 F.3d 1063, 1066 (9th Cir. 2003).  A prisoner seeking to exhaust claims in state
5   court before filing a federal habeas action should diligently pursue his available state
6   remedies to avoid application of the one-year limitation period.  See Shelby v. Bartlett, 391
7   F.3d 1061, 1066 (9th Cir. 2004) (applying § 2244(d) to a habeas petition challenging a
8   disciplinary order).

9   Plaintiff does not allege that he appealed his disciplinary charge administratively.
10  Even if he has, it appears he also has an available remedy in state court, where he must fully
11  exhaust challenges to the disciplinary proceedings prior to filing a federal habeas corpus
12  petition.  Although Arizona's Administrative Review Act does not authorize state judicial
13  review of prison disciplinary proceedings, an inmate may seek such review by bringing a
14  special action in superior court.  Rose v. Arizona Dep't of Corr., 804 P.2d 845, 847-50 (Ariz.
15  Ct. App. 1991).  If unsuccessful, the inmate must then appeal the superior court's ruling to
16  the Arizona Court of Appeals to exhaust his claims before seeking federal habeas relief.  See
17  Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999).

18  **V.     Claims for Which an Answer Will be Required**

19  In Count I, Plaintiff alleges that his repeated assignment to alternate placements,
20  rather than long-term protective segregation, pursuant to policies promulgated by Schriro and
21  enforced by Defendants Rollins, Haley, Sternes, Watson, Miller, Crouch, and O'Bryant,
22  despite knowledge that Plaintiff is an STG target and previous attacks, have resulted in
23  repeated attacks against him by other inmates.  Further, he alleges that his repeated
24  assignment to protective segregation reviews alerts inmates in general population of his
25  status as an STG target and increases the risk of further assaults when he is eventually
26  returned to general population, even in an alternate placement.  He alleges that Defendants
27  Rollins, Haley, Sternes, Franko, Watson, Miller, Crouch, and O'Bryant nevertheless have
28  continued this practice, increasing the number of general population inmates who know of

Plaintiff's protective segregation reviews and increasing the likelihood of further assaults if he is returned to general population. Plaintiff sufficiently states a claim in Count I against these Defendants. They will be required to respond to Count I.

## VI. Warnings

### A. Release

Plaintiff must pay the unpaid balance of the filing fee within 120 days of his release. Also, within 30 days of his release, he must either (1) notify the Court that he intends to pay the balance or (2) show good cause, in writing, why he cannot. Failure to comply may result in dismissal of this action.

### B. Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

### C. Copies

Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files. Fed. R. Civ. P. 5(a). Each filing must include a certificate stating that a copy of the filing was served. Fed. R. Civ. P. 5(d). Also, Plaintiff must submit an additional copy of every filing for use by the Court. See LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

### D. Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. See Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1) Plaintiff's Application to Proceed *In Forma Pauperis* is **granted**. (Doc.# 3.)

(2) As required by the accompanying Order to the appropriate government agency,

TERMPSREF

- 9 -

1  Plaintiff must pay the $350.00 filing fee and is assessed an initial partial filing fee of $24.00.

2      (3)    Count II and Defendants Harkin, Morris, Fizer, Schmidt, Ramirez, McNatt,
3  Rearend, and Clark are **dismissed** without prejudice.

4      (4)    Defendants Schriro, Rollins, Haley, Sternes, Franko, Watson, Miller, Crouch,
5  and O'Bryant must answer Count I.

6      (5)    The Clerk of Court must send Plaintiff a service packet including the
7  Complaint (doc.# 1), this Order, and both summons and request for waiver forms for
8  Defendants Schriro, Rollins, Haley, Sternes, Franko, Watson, Miller, Crouch, and O'Bryant.

9      (6)    Plaintiff must complete and return the service packet to the Clerk of Court
10 within 20 days of the date of filing of this Order. The United States Marshal will not provide
11 service of process if Plaintiff fails to comply with this Order.

12     (7)    If Plaintiff does not either obtain a waiver of service of the summons or
13 complete service of the Summons and Complaint on a Defendant within 120 days of the
14 filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the
15 action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv
16 16.2(b)(2)(B)(I).

17     (8)    The United States Marshal must retain the Summons, a copy of the Complaint,
18 and a copy of this Order for future use.

19     (9)    The United States Marshal must notify Defendants of the commencement of
20 this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal
21 Rules of Civil Procedure. The notice to Defendants must include a copy of this Order. The
22 Marshal must immediately file requests for waivers that were returned as undeliverable and
23 waivers of service of the summons. If a waiver of service of summons is not returned by a
24 Defendant within 30 days from the date the request for waiver was sent by the Marshal, the
25 Marshal must:

26     (a) personally serve copies of the Summons, Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and
27
28     (b) within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the

**TERMPSREF**  - 10 -

summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(10) **A Defendant who agrees to waive service of the Summons and Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

(11) Defendant must answer the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(12) Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(13) This matter is referred to Magistrate Judge Jacqueline J. Marshall pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for further proceedings.

DATED this 11th day of June, 2008.

_____
David G. Campbell
United States District Judge